David Harris v. American Accounting Association, Lisa DeSimone, Matthew Eggeman Hall. If I could ask a preliminary question. Yes. The court asked us to be prepared to brief various aspects of the anti-SLAPP law. I submitted a letter to the court on Sunday, I think, in which I identified five appellate on-point cases, each one stating the anti-SLAPP law could not be applied on a retroactive basis. My case was filed on September the 8th. The legislation states an effective date of November the 10th. And in fact, one of the cases I cited in my letter was actually somebody else who filed the case in September. And the court ruled, law does not apply. So, of course, I think the court's time is amazingly valuable. And I think the questions that were asked are moot. Because there are these five appellate. What I'm asking is, I mean, you're entitled to rely on the papers that you submitted. You don't have to address something orally unless there's a question about it or perhaps on rebuttal if your adversary raises it. But you can use your time as you see fit to address the issues that you think are most important. And for the rest, you can rely on the papers you've already submitted, which, of course, we've read. I'm sorry, Your Honor. All I was trying to say was you asked some detailed questions about this law. And you said you just said that you submitted it in writing. Oh, yeah. That was the letter, which has in there that this law doesn't apply. So if you want to ask questions about it, I didn't really spend much time once I saw that preparing those questions because this is 100% uniform appellate decisions. Both the Fourth Department and First Department have said that. Not retroactive. And the law, of course, says that. Right. I mean, I'm just trying to understand what your question is. And I thought I did, and maybe I misunderstood it. No, I'm sorry. I just wanted to say you asked something about it, and I just wanted to say I think that maybe we would talk about the case-in-chief problem, if that's okay. Right. Correct. Great. That sounds wonderful, Your Honor. Thank you very much. I just wanted to clarify a little bit. To start with, there are some unfortunate errors in the decision below, some unfortunate errors of fact, and some unfortunate errors of law. And the truth is there's unfortunately quite a few of them. So we could start with the simple idea of what do we have here. We have a case of plagiarism. We have a case of academic plagiarism. I wrote a paper. I submitted two theories or hypotheses. I proved two results supporting those theories and hypotheses. And they then, the defendants, produced a paper in which they duplicated, to start with, half of my work. And then later they kept sending out new versions and duplicated 75%. And in the end they duplicated all of it, but only in the published paper, published by defendants, American Accounting Association. Now I had informed them in writing, all of this is in the exhibits, in detail, that this was ongoing plagiarism. I was the first person to do it. Nobody else can claim credit for the paper. And they went ahead and published it anyway. And, of course, they participated in it. It's a research journal. They only publish things if they agree with everything in it. Also, you can easily see that the false claims increased from 75% of my work to 100% of my work. In the time period the AAA, American Accounting Association, was working with them. Therefore, they agreed to this increased fraud, or even suggested it, because the paper did not change itself in that time period. Somebody said, let's take the rest. Somebody else said, let's go ahead. You're speaking of three filings, two preliminary and one, the actual paper, published by the defendants. I think there's a lot more than that, actually, but in total, a few more. I mean, I'm just following what you're saying. Right. So you sent an email or a letter to the American Accounting Association before the publication of the final version. Yes. The final version credited you, did it not? I appreciate your honor, and I think that's a very important point for us to consider. It has to do with whether the American Accounting Association is stealing anything. I mean, you send them a letter and you say this is based on my work. They look at it and they see there's a footnote or whatever it is acknowledging your work. I think that's a very important point, which does need to be addressed. Prior to Daystar, we had the case of Waldman, which was from the Second Circuit. And the case in Waldman is very clear. It says a false reference to the origin of a work or a reference that is misleading or is likely to confuse is sufficient for an unfair competition claim for false origin. And they say any attribution must be accurate and not misleading. You see, the problem here isn't my citation. You see, the problem here is they claim themselves to be the origin of the work. So it's confusing. They say, hey, hey, I'm the origin. They credit me. And then they say over here, we're the origin of the work. Explicitly. They say we extend the literature by doing what I did. Mr. Harris, let me just jump in for a second. And maybe I'm misreading that, but my understanding is don't they state in the published article that you were, in fact, the first to examine that? Yes, they certainly do. So they're not just saying this is coming from your work. They're saying you were the first to examine this work. They do say that, Your Honor. I can't question that a bit. So I'm confused as to how is there fraud or misleading, or I don't see how that follows from what you just said. Well, it follows because they explicitly write in the paper two things. The first thing they write is we, they say, they extend the literature by, and the by is exactly what I did. You can't extend the literature. The words extend the literature are very clear. They mean what they say. To extend is to go beyond what has existed. Only the first person can be extending anything, and they claim it. And American Economic Association, let them do it. Secondly, they write a hypothesis. Now, a hypothesis in a legitimate paper, to my paper, would say something like, Len Harris, he studied the theory, and they say that. What they say is we propose the following hypothesis, and they test it, and they claim to be the first to do that. Now, that creates enormous confusion, and I think the question of confusion here becomes very important. Excuse me. Isn't the testing what's important in the research? I mean, anyone can have an idea that this is a principle. Yes, sir. And then the question is, is someone able to document. Sir, I tested it. What is true and what is not true? Yes. I tested it. It was in my paper that I had the theory and the result. They reproduced on the same result, and they claimed the same theory as if it were their own. Isn't that science? That is to say, when someone gets a result, someone else can replicate it using perhaps different methodologies. Absolutely correct. Or more data. No question. That's absolutely correct. And they did do that. And you're saying that they tested the same data in the same way. They tested what they claimed was to produce a theory, which was my theory. They claimed to test it and find results, which duplicated my results. The Office of Research Integrity for the federal government, charged with oversight of federal research, says that to claim the theories and results of another paper is plagiarism, period. The proper way to say it is, Harris proposed it. We're going to examine it. That's how you do it. They said, we claim it ourselves. And if one looks at the possibility of the result of that, as I put into the appendix, there's more than a hundred researchers, writing research experts, giving them credit for that work, as if they're the original writers of it. Because by AAA, American Accounting Association, approving this blatant claim, everyone has accepted it. That's a hundred researchers. Now it's even worse, because every one of the 45 papers has an editor and one or two reviewers. And they agreed, too. The level of actual confusion is beyond belief. I'm not sure why that is confusion. These are the people, the American Accounting Association, who published the journal, right? Yes. Two competing articles. And they thought one was better, I take it. One of the reviewers had some comments that were critical of yours and found theirs not to have those flaws. They went with that. And then it acknowledges you as being the first person to have done this kind of work. Now, I'm sorry if your university or somebody else wants to see a publication in a peer-reviewed journal and is unwilling to recognize that someone who was, in fact, the first person, as acknowledged in the article, doesn't get some rewards. That seems to me to be an unfortunately common, misguided university principle that wants to look at statistics instead of ideas. But that's—I'm not sure where the false—this is a claim of unfair competition. It seems to me you were competing with these folks to get your article accepted by the journal. The journal was the arbiter. They made this decision. I don't see anything in your pleading or anything that makes sense to suggest that the American Accounting Association somehow had some preference for these students as opposed to someone who's a tenured professor in the field. I have never said they had a preference, Your Honor. That seems to me rather peculiar to suggest that this is some kind of conspiracy rather than a good-faith, if erroneous, judgment by— It could be very good faith as to the publication, and I don't have any question about it. I don't have any problem with that. As a matter of fact, I welcome publication that cites my work. That's how my work is made important. I don't even question it for one second. It's as if I decided to write an article extending, say, Newton's theory, and I open up by saying, I'm the first person to think of gravity, and I claim that for myself, and then I go on to do more. It's that first claim that's the problem. It's not that they did something different. It's not that they might like it better. It's that they wrote explicitly and repeatedly that they were the first to do this idea. Now, that's important because even if they do something, they say, well, Harris did this first, of course, and they don't claim it for themselves, that leaves room for me to publish the work that I did because it is important as well. But once they say, we are the origin of the work, and that gets into the public domain, I'm dead. I can no longer compete because they claimed what I am entitled to claim. And it's nothing to do with the bits and pieces. It has to do specifically with the statements. We extend the literature by doing only what I did, nothing extra, quote, word for word, what I did. We extend the literature. Leolier said, there's no published paper doing what we're doing. Of course, I had a published paper. This is unexplored area. It wasn't unexplored. I did it. What they lied about is who is the origin of the work. There's a difference there, and it's an important difference. It's a critical difference, as a matter of fact. They misidentify who gets credit for the original discovery. It's like Watson and Crick, right? Watson and Crick, double helix, competing. Watson and Crick were first. Here's DNA. What if two weeks later somebody got up and said, oh, we're the real original people. We really created it. Not you. We did it. They have contradictory statements. They claim to be first, and then they say I'm first. Now, that's confusing. That's weird. Waldman says confusing citations are actionable. And the actual confusion is everyone cites them, and they don't cite them for anything extra. They cite them for exactly what I did. When those quotes I put in there from 100 researchers, they give them credit for what I did first. And they should always be crediting the first person. That is how it works. Mr. Harris, I'm just going to jump in. You have a couple of minutes to respond in rebuttal, so we're going to hear from the other side. Oh, I don't get six minutes? You've got 11 so far. Oh, I'm over. I'm very sorry. Of course. Good morning, Your Honors, and may it please the Court. My name is Andrew Holland. I represent the American Accounting Association. Your Honors, this lawsuit was filed for one purpose. This lawsuit was filed to intimidate and coerce the plaintiff's academic peers from publishing their own independent research in scholarly journals. My client was ensnared in this effort because it happens to have been the organization to publish the journal that published the individual defendant's work. Now, I think that the plaintiff has made several statements today, which I think underscore sort of the gravamen of the problems here, which is that you cannot claim ownership of a scientific theory or fact. The Supreme Court has spoken about that. It's very clear. He may think he's the first to have discovered a particular fact, but he can't claim ownership of it. Now, one thing that I think is conspicuously missing in his argument today and missing in the brief is that these are two separate articles. They're written from different perspectives. They're written using different samples, different years. The plaintiff used a certain selection of years for his study. The defendants used a different selection of years. They're different, and as Judge Lynch was pointing out before, that's how science is extended. That's how the literature is extended, to use a phrase that the plaintiff doesn't like the defendants having used here. But these are different studies. At no point in time does he actually circumscribe what his argument is beyond a definition that he has conjured up that sort of globally encompasses what the topic is. You can't do that. He says, for example, Newton said that I'm the first to discover gravity. Nobody else can come along and talk about gravity, about saying that they're the first to discover it. But I can assure you that if you look in various scholarly articles, SSRN, any other source, you will probably find thousands of articles discussing gravity. I would assume that many of them, probably most of them, don't mention Newton unless they're using it in some context to say, as we all know, Newton was the first, but here we are now. They don't have to because they're talking about something different. He claims he was the first to originate this research, but the complaint doesn't actually describe anything specific to show that anything was actually stolen. And, of course, you have to get past the hurdle that he can't claim ownership to any of this. The law is very clear on this, whether it's a New York state unfair competition claim or under the Lanham Act. He needs to show that something was actually stolen. Now, there are various other arguments in here that I think there's really not much discussion over. For example, the American Accounting Association does not compete with the plaintiff. I know there's been some back and forth in the briefing over, well, the courts say you don't have to be an actual competitor. That's correct. You don't actually have to be a good faith competitor, but you have to be competing. As I wrote in the response to the plaintiff's request to certify a couple of questions on that point to the New York Court of Appeals, if you go out on the street, you're going to find people hawking imitation luxury watches. They are unfairly competing with the watch manufacturer, even though they're not a legitimate competitor. That's different from having two different entities who are involved differently in a particular process of publishing academic work. Now, I do – I wanted to address the points that the court – I mean, isn't your argument that you're the public here, in effect? You're the one who was deceived? If someone was deceived on his theory, had it not been for the fact that you were aware of his claims, if somehow the author defendants had submitted an article and you had, for some reason, no idea of Mr. Harris's work, they're competing to get in your journal. And now they've both stated their claims. Not only have they submitted their papers, but Professor Harris has also said, this is why I think that you should publish my work because it was actually first. Is there anything in the record that explains why the journal made this decision? I take it we've got reviewers' comments and we've got the editors' comments? Right, so there were – Just tell us, if anything. Well, first of all, there was one point where they were already in the process of selecting the article drafted by the other defendants. I believe there was also – there were some other – there were edits that had gone through. There were some criticisms about the quality of the work, about how certain conclusions were reached and whatnot in the plaintiff's work. So there were separate criticisms apart from the fact that they were already going to publish the co-defendant's work here. And again, this is all academic process. This would typically be beyond the purview of the courts to try and decide, well, did they make a good decision in rejecting his work versus the other authors? But there were reasons beyond that. And I think also when you look at the articles which were attached to the amended complaint as exhibits, they're different. As I said, they use different sample years. The summary and conclusion of each article is different. The abstracts are different. There are different lengths. You read it and clearly their approach is different. The plaintiff's work discusses more about Sarbanes-Oxley as being sort of a precursor to where he's – to his approach to the argument. To say that he can sort of clear the field of any research in that general topic – again, we're talking about a topic of plaintiff's own definition. That's how he put – what he put in the complaint was how he wants to describe his work. He is effectively saying nobody else can talk about this area without citing me as the first. And there's simply – there's no argument to say that he can do that. No, he's saying nobody can discuss this and claim that they are the first when I am the first. Right. And that's different than what you said. I mean, he's saying that the false statement is that these authors, the defendant authors, claimed that they were the first and therefore discounted his work and his reputation and his paper. Well, let's assume that – let's assume that were the case. Let's assume that they – and again, the complaint – That's what he alleges. I mean, I don't know what is the case. I don't really read accounting journals. Well, let's assume here that these are the identical articles reaching identical conclusions after identical studies. The complaint doesn't articulate that. The complaint doesn't articulate bad faith, which means you need to get past simply I beat you to the punch. You published first, but I already beat you to the punch. When you write a research article, you're supposed to check these sites. You're supposed to make sure you are indeed the first. He's claiming they didn't do that. That's different from saying they stole his work. Well, actually, I think he's claiming both. There have been both iterations in here. But the claim that you didn't – that you published exactly the same thing I did is not enough to meet the bad faith requirement that's necessary for the New York unfair competition claim. So even if we assume that the article that my client published that the individual defendants authored is the same, he has to show bad faith. Now, he's not making a copyright claim. In fact, we had put an argument, one of multiple arguments in our underlying motion, which a district court had rejected that this should have been brought as a copyright claim. He's saying there's no copyright infringement alleged here, simply that they took the idea – it was his idea. Without alleging factually bad faith under Twombly and Iqbal, sufficiently show bad faith, he can't meet the pleading standard for an unfair competition. Bad faith on the part of you, of your clients, right? I beg your pardon? Bad faith – he has to allege bad faith on the part of your clients. Correct. Not just on the part of the people who are doing the competing work. Right. That sort of lumped in in the underlying argument of essentially that the association conspired with these individuals or knew that his work was out there or knew that they were not properly cited. Well, he did know that his work was out there because he told you. I mean, you know, I think with all respect, you're sort of over-claiming yourself into problems here. He's not claiming that no one can talk about this topic anymore. He's saying that no one can talk about it and say – and claim the benefit of his work. And he's not saying that there's – no, all right. But the point, as I take it, for your client is just what is it that suggests any bad faith on the part of your clients in selecting one article over another? And that's where I see the – your sort of best spot here is why do you have a stake in saying that these obscure people in Texas are somehow to get bestowed the honor here of publication in your journal rather than making a decision about what you'd rather publish for whatever academic reasons? And that might be – you may have made a terrible decision for all I know. I don't read accounting journals as a regular practice either. But that's the – whether it's the right or the wrong decision in terms of academic judgment is not for us. Correct. Right. And so the bad faith requirement would extend – Is what's critical there. Right. And that's the key difference between the New York unfair competition standard versus the Lanham Act. There's nothing pled here and there's simply nothing to suggest that there was any bad faith. Yeah, I mean if your editor was the father of one of their authors, we might have an issue, right? If there's some conflict of interest or some reason to believe that the agency acted in bad faith, I think we'd have a rather different case. Perhaps. I would submit again, given the underlying nature of – There might be other problems. Right. Right. There you might have an arguable claim that there was something that would add sort of a bad faith component to it, which simply does not exist here. I know the court had wanted the parties to address the anti-SLAPP components, which I wanted to address briefly, those points. First of all, the first department, we submitted a 28-J letter with the case cited and we attached an exhibit to it. The first department has granted anti-SLAPP fees where they were sought on a motion versus in a separate cause of action. What about the retroactivity? That's the place where Mr. Harris – So the retroactivity, I respectfully submit that the first department got it wrong. And the reason is this. There was an initial – Wait, wait, wait. Okay. Remember that we are applying New York law. So it's possible that they got it wrong. But you're going to explain to us why it should be obvious to us that the New York Court of Appeals is not going to follow and we should not follow what is the principal appellate decision in New York State. Correct, Your Honor. So there's been a line of cases from the first department that started with one Gottwald v. Siebert. And this was a case, a defamation case, very heavily litigated defamation case. It's been going on for years. In the last, I believe it was the seventh year while this case has been litigated, the anti-SLAPP law goes into effect. The defendant's attorney files a motion asking the court to declare that the anti-SLAPP law applies and they get all their attorney's fees for the litigation. The first department said you don't get that because it doesn't apply retroactively. Therefore, the motion denied. They then followed that with these couple other cases where the lawsuit had been filed a couple months before it went into effect, like this one, and it's just simply citing to Gottwald's set. It doesn't apply retroactively. However, here, and this is where I said I got it wrong. There's no need to consider the retroactivity argument because the statute is specifically written to allow fees that are commenced or continued for the purpose of harassing, intimidating, punishing, or otherwise inhibiting free speech. I think that's important. The statute was drafted with this language in there.  In a case like this. Well, the word continuing could be in there because the abusive nature of the litigation could develop after the filing of the initial pleadings. Certainly, and that shouldn't change the outcome here. Correct. You file a lawsuit. It turns out a year in, okay, I no longer have a good faith basis for this. I better discontinue my lawsuit. The fact that that's in there, though, suggests that the legislature was intending for there to be an ongoing consideration of whether or not there's a good faith basis to proceed with the lawsuit. So in order to sort of ignore that in this type of a case and say that we're looking purely at the commencement date would, I think, would run contrary to the reason you would put that in there. If it's an ongoing consideration, then that should also be ongoing for any other reason beyond merely because it has now become, no longer has a good faith basis, but it did originally. In either situation, I think the question comes into play. It doesn't seem to be the way the New York courts are approaching this. And if it's untimely or if it's after the adoption of the statute, according to New York courts, it doesn't apply. I think the reason here that it would is that if a case that was commenced before the law went into effect- And it becomes, at some point, vexatious. Correct. In that scenario- I hear your argument. I just, you know, I mean- Isn't that what the case was in the first department? That's why you say they got it wrong rather than that is distinguishable. In other words, you're saying, and it's a reasonable argument, that if a case is begun before the statute becomes effective but continues in an abusive way after, then the anti-SLAPP statute should apply. I understand that argument. But I thought that was the case in the first department's original decision. No, in that case, they simply sought their attorney's fees. There was no- they didn't ask for attorney's fees from the date the legislation goes into effect forward. They said, well, we've been litigating this, accruing millions of- I mean, I'm editorializing, but they wanted everything. And the appellate division- Said you get nothing. It didn't say you get only what comes after the effective date of the statute. It looks like they didn't- that wasn't argued there. Obviously, I can't speculate into why the appellate division- So you are saying that that decision is distinguishable, not that they got it wrong, but that they, to whatever extent in God's eye they got it wrong, that's just because the argument wasn't put to them. So we shouldn't decide that- you've got a different story here. And what about those other cases that come afterwards? Right. Gottwald is distinguishable. The cases that came afterwards, we believe the appellate division got it wrong because they were- They mindlessly cited what they'd said before. Right. And is there any case anywhere in New York that says what you're saying now? There's not. There aren't that many cases in general. I mean, it's a new enough law. The Court of Appeals, of course, has not had the opportunity to weigh in. You want us to send you to the New York Court of Appeals to decide this question so you can spend more money on this litigation? I mean, that's- obviously, there are certain ways to get the Court of Appeals to weigh in. It would be ironic that I know the plaintiff has asked the court to certify other questions that I think are fairly well settled, but that could be a way, and we'd see what they would say about it. But I do think, given the language of the statute and the language of the Court of Appeals precedent on retroactivity- You certainly have a good faith argument about that. And if I may, Your Honor, another issue that was brought up in the Court's order, obviously, there was an amended complaint filed here. Under New York State law, the amended complaint supersedes the initial complaint. That was filed well after the effective date of the lawsuit. I don't think there's any question about that. So at the very least, certainly anything from that point forward should be fair game. There's no case law addressing that question from New York State on the anti-SLAPP law. The last- You agree, do you not, that the standard in the anti-SLAPP law is essentially equivalent to what is sometimes called, in the federal cases, the litigation has to be frivolous. It's not just that it fails. It would have to be that there is no substantial basis in fact or law for the claims. Respectfully, Your Honor, I think that's- But you agree that that's the standard. I disagree to the extent that I don't think the- I believe here it's not- it doesn't have to be frivolous. It's not that- I mean, obviously, if it were frivolous, you would have another avenue through New York State procedural law to get your attorney's fees, to get sanctions. I think here, frankly, and if you look at the New York motion standards, which, again, we didn't move under. We moved under 12D6. We didn't ask the court to adopt the CPLR 3211G standards here. But if you look at the CPLR 3211G and 3212 standards, the plaintiff in state court has a heightened burden, which I think supports the- It means it's not- we don't have to show that it was frivolous. We simply have to show that it didn't have a basis in law. But now you're getting into eerie territory, aren't you? I mean, I've always thought- I think we have a case on this from California law, not New York law, that says that to the extent that these anti-SLAPP laws require something more to get past the pleading stage, that's a procedural rule and we apply federal law because the federal pleading standard is set by Rule 8 as interpreted in Twombly. So- Now- but this is- this might be different because the attorney's fees provision has a better claim to being a substantive imposition of New York law. But if you're sort of tying this back into the- they've got a higher pleading standard now, then we have problems. So I'm- I'll try to thread the needle here. I mentioned the New York pleading standards for the point that the standard- it doesn't have to rise to the level of frivolous. If it did, then the burden wouldn't shift to the plaintiff to say you better have a good faith basis at the pleading stage. Here- well, so Civil Rights Law Section 70A says cost of attorney's fees shall be recovered upon a demonstration including an adjudication pursuant to the state procedural rules. There's nothing in there that says that it has to- that it can only be granted pursuant- if a motion is brought pursuant to those rules. And for- by every reading of the statute, we could have gone to trial, won at trial, and then made an application for fees. So the statute, I don't think, requires the court reviewing the claim to apply the heightened standard, and we didn't ask it to here. That raises another question. Suppose we thought on one or another of these grounds that the anti-SLAPP law doesn't apply and the district court erred, whether it's because it's retroactive or some other problem with the New York statute. You asked for sanctions under a different theory and a different standard. Would we be then required to remand to the district court to give the district court the opportunity to consider your other reasons for why you should get your attorney's fees? Or are we just done if the district court is wrong about the anti-SLAPP law? I'm sorry, Your Honor. I'm not- I said- You asked for sanctions. Correct. You did not ask for sanctions under the anti-SLAPP law is what you're telling me now. Is that correct? No. No, I'm sorry. No, Your Honor. We asked for it- so we asked for attorney's fees. We didn't ask for sanctions. We asked for attorney's fees pursuant to 70A and 76A of the New York Civil Rights Law, the anti-SLAPP law. Oh, okay. The- I'm sort of- I'm trying to distinguish procedurally how to get it past Erie because we- Oh, okay. I hear what you're saying. So you asked for sanctions under the anti-SLAPP law. That's what you got. The issue before us is whether- I shouldn't say sanctions. Perhaps that may be what's confusing me. You asked for relief under the anti-SLAPP law. You got it. The argument here is whether you're entitled to attorney's fees on that basis or not. End of story. And either you're right or he's right about that. Correct. About what that law is, for example. Correct. I understand that. Right. And as I was saying, based on the language of the statute, including the word including, which the New York Court of Appeals has recently defined, they've discussed what does including mean. And it's intended to be expansive insofar as it's- in a statute like this, it's- okay, these are some of many possible avenues to get this relief. There's nothing in there to suggest we couldn't get it through a 12D6 motion applying the court's- applying federal standards procedurally. This is not a question of whether there needs to be a motion or a counterclaim or whatever. Well, this would be under the court's concern over whether Erie precludes the court from awarding fees because of the heightened standard. Got it. Right. And that's where- and I know the California- the case where the court interpreted California's law, the plaintiff did ask for the court to adopt California's most standard- pleading standard. Right. We just did 12D6 here. That's- and then the- Mr. Holland, I think- I'm sorry, I- No, no. You can ask the questions, but I think if you can wrap up and- I can, yep. And yet in the last argument, which the court wanted the parties to address, these arguments haven't even begun to be addressed by the plaintiff at any point, including in the briefing in this court. Therefore, they should be considered waived. Like any other argument, we cited a case in our 28J letter where the state of New Jersey waived sovereign immunity by not arguing it in a New York state court. Obviously, that's a very important defense available to a state not to be sued in another state, and it was considered waived. I think in this case, if retroactivity is a viable defense to the claim, the plaintiff hasn't argued it. So for these reasons, unless the court has any other questions, thank you for your time. I respectfully ask the court to affirm. Thank you. Mr. Wilson? May it please the court. The judgment of the district court should be affirmed as to the author defendants for at least two reasons. First, the district court correctly recognized that it lacked personal jurisdiction over those defendants because the New York long-arm statute doesn't reach them. And even if it did, personal jurisdiction in this case would offend due process. Second, plaintiff has failed to state a claim under New York's unfair competition law. His claims do not relate to the sale of goods, but instead concern facts or ideas. And there's no legitimate allegation of consumer confusion where, based on plaintiff's own pleadings, at the end of the day, he was fully and honestly cited. Who's the consumer? Who is the consumer? I presume the... You said there's no consumer confusion. Who's the consumer who is not confused? I presume the consumer would be individuals who read accounting journals, which I'm happy to stipulate I'm not one of either. The point I want to make, though, Your Honor, is Mr. Harris says he was fully and honestly cited in the publication by AAA. The publication by AAA, the association, is the only thing that the district court held as within the statute of limitations because it was published in 2014-2015 and the district court applied a six-year statute of limitations. So that's the only actionable publication. And he concedes that that publication cites him fully and fairly. So I think that his sort of claim goes away on that basis alone. I'd like to turn to the personal jurisdiction questions because I think those are fairly straightforward. Mr. Harris is proceeding on an argument that either SSRN, which, again, that conduct is all outside the statute of limitations, or the association were acting as agents or co-conspirators of the individual authors. The district court got it right that those are threadbare and don't satisfy the pleading standard. The first reason is because there's nothing like a classic sort of principal-agent relationship here. Both SSRN and the association retain control over what's the important thing here, and the important thing is whether the paper gets published. Mr. Harris sort of goes back and forth about the fact that the authors have the ability to amend their paper or update their paper or things like that, but that doesn't show control over the ultimate decision to publish. And so I think there's no sort of classic principal-agent relationship here where the authors are exercising any control, much less substantial control over that decision. Second is to conspiracy. I think the allegation of conspiracy comes down completely to the idea that Mr. Harris informed the association and they went ahead and published it anyway. That doesn't show any of the sort of regular indicia of a civil conspiracy that this court's used to extend jurisdiction based on conspiracy. That includes motive to conspire, existence of actions against economic self-interest, things like that. Those indicia just aren't present here. I'd briefly like to talk about due process as well because the context here are really, really de minimis. It's basically the fact that SSRN, which again is outside the statute of limitations, was for a time headquartered in Rochester. I'd point to the Supreme Court's decision in Walden v. Fiore, which emphasizes that courts have been extremely reticent to infer personal jurisdiction from contacts with third parties. The analysis almost always looks at the defendant's contacts with the forum state, and here the contacts with the forum state are nearly nothing. I think Mr. Harris doesn't cite it, but I think the most relevant Supreme Court case might be Calder v. Jones because it is personal jurisdiction about the publication of an article, and the court found personal jurisdiction in California, but the court also made very clear several ways that case is distinguishable. It talked about the circulation in California of, I believe it was the inquirer, the circulation being the highest in California, the sources all being from California, the individuals who the article was about being in California, and so there were substantial bases for jurisdiction in California that's not present here. I just want to alert the court to that case because I do think it's the most analogous. Turning to the failure to state a claim, I'd again like to just make two brief points. First, again, I think the easiest, and I sort of presaged this earlier, I think the easiest way to affirm on the merits is to say the only thing that's within the statute of limitations is the 2014-2015 online and paper publications in the association's journal, but those publications give Mr. Harris the full and fair citation he wants. I believe full and honest are the words he used or something to that effect in his complaint, so I really don't see how there can be confusion from the people who read these accounting journals because it says essentially that he was the first person to generate the idea. Second, and I'd just like to briefly say, the district court construed this as a reverse passing-off theory. We cite ITC in several other cases for the idea that this relates to goods. Mr. Harris cites various cases that sort of have things that are less tangible than manufactured goods, but they're all sort of products or complete commercialized items that can be sold, so I think he fails to state a claim on that basis as well. I see I've only got about a minute and a half left. I'm happy to answer any questions the court has about the anti-SLAPP, but I would note that in our brief about the anti-SLAPP questions, but I would note in our brief that we consented to a reform of the judgment to not include anti-SLAPP fees as against the individual authors, so I'm happy to be helpful to the court. I don't want to dog in that fight anymore. You're not merely confessing error or suggesting that he's, in fact, that you aren't entitled to these attorney's fees or something like that. You're just saying you don't want them. That's correct, Your Honor. We're certainly not confessing error. So you're not adjudicating between these parties at all. They can fight it out, but you don't have that. I'm from Texas, Your Honor. I don't have a dog in that fight is exactly how we would put it. That's how you would put it in Texas. Indeed. I'm happy to give Texas the credit for being the inventor of that phrase. It certainly wasn't me. I'm happy to answer any questions the court has, but if not, we would ask that the court affirm. Thank you, Mr. Olson. Mr. Harris, you have a couple of minutes. Briefly stated, let's dispense with sale of goods. Fisher v. Starr said courts are not confined in the exercise of their equitable power to preventing unfair competition among manufacturers and dealers in goods. Never overruled. Never questioned. Cited 75 times. Cited in this court five times. Good law. Cited in 2018. Forget goods. I should also point out that they're misrepresenting this ITC to the court. The only issue before that court was famous marks. I tracked that thing through 75 previous cases, and every one of them that used words like that, no issue as to property. It's like saying you killed somebody on Tuesday. It's murder. Somebody else comes along and says, ha, murder is limited to Wednesday. That's what they just said, or Tuesday, whatever it is. The point is they've taken a word to describe the transaction and pretend it's a rule of law. That's a lie. And here's the quote from Fisher v. Starr, says it's wrong. And, by the way, Fisher v. Starr was quoted with approval in the case they're citing. No way the Court of Appeals will cite another Court of Appeals case saying the opposite of what they think. Forget sales of goods. But let's talk about the question of whether or not a false claim of origin, because I don't say anything about ownership. In fact, in the amended complaint, I say I don't even care that I was rejected. And, by the way, you want to know why I was rejected? As the district court stated, in large part because credit for my work was given to defendants. That's why I was rejected. It's what it says in the exhibits. It's what they wrote in their review. They rejected me because they gave credit to them. That is confusion. That is deception. There's nothing more perfect than that, than to deceive reviewers and experts in the field, hundreds of them, to get credit for my work. Now, is that actionable? We have Shabazz. It says you're free to copy anything you want that's not copyrighted, but it is reverse-parmeling off an unfair competition. If you represent yourself as the creator of the work. And we can look at Walden. Second Circuit Court deals with prior to Daystar, of course, naturally, and they make the statement here. Reverse-passing off, as applied to written work, is the misappropriation of credit belonging to people who are the original creator of the work. Misappropriation of the artistic talent, the creative talent required to create that work. I created this work. They claim that they created it. They deceived everyone. And hundreds of people are doing it. And it's ongoing. If you want to look right now, you'll find there are more cases citing them for my work than there were before. There is confusion. It's a lie. And in my field, who writes the article is often more important than what is in the article. Because it is by getting publication and recognition for creative, novel, interesting things that you are evaluated. And if they want to replicate my work, that's fine. Everybody replicates other people's work. And they start out by reproducing it. Right? You reproduce it to show you know what you're doing. And then you extend it into something new. That is very common. And that's wonderful. I would approve of that. That's how I get credit. You like my work so much, you reproduce it. But no one stands up and says, I'm the creator of what I'm replicating. That's a fraud. That is plagiarism. And to get an idea how much we don't like it, it gets the worst treatment that any private organization can mete out. People get fired. They're scorned. They permanently lose their job. You don't get to plagiarize. And the definition is claiming the hypotheses and results of another paper as your own. Now, it's not just copying either, because they stand right up and say it. By the way, statute of limitations, leading case in the field, 125 citations, says that you can start a problem and there is no starting the statute until there's an injury. There's only one injury here. And that's when they published their paper in 2014. Nothing else was an injury. I mean, it would be crazy to come to this court suing because they said something wrong with no damage. I would never do such a thing. But the damage is produced only by the official recognition of the paper. And then we ask the question, good bad faith. I don't say bad faith. Well, I'm really sorry about that, but the bad faith definition is amazingly simple. Bad faith is nothing more nor less than intentionally deceiving the public. This court itself has said that the crux of bad faith is intentional deception of the public intended to produce confusion. Plagiarism only does that because it depends on establishing a reputation. All of these citations crediting these people is what builds their reputation. And they can only get it if the public acknowledges the fraud, accepts the fraud. I'm sorry, but you are repeating yourself. Do you think we didn't hear this before when you said it? Well, I noticed other people got a lot of time, but I don't mean to overstay my time if I shouldn't. I'm just concerned that they said things that were simply incorrect. And I didn't address bad faith previously. I should also point out that in the question of retroactive application, they don't address the Fourth Department. Fourth Department came down on December 23rd with the same decision. Yeah, right. But they didn't mention it. With regard to those retroactivity issues, we do have your papers. So I'll just give you just like one minute to wrap up, okay? Okay. So anyway, the point I'm trying to make is that if you mischaracterize this as a claim of ownership, yeah, I'd lose. I don't claim ownership. I never claimed ownership. I claim exactly what Walden talks about, what Shabazz talks about. Oh, by the way, giving me credit, this case of Ippolito, it's very simple. Ippolito played piano. They made a video. In the video, they showed Yoko Ono pretending to play piano while Ippolito was actually playing. And the court rules explicitly the fact that Ippolito got credit in all cases, he was credited for playing piano, did not change the fact that by misrepresenting someone else as playing the piano, they deprived him of the reputational enhancement of being the piano player on this important event. And in my case, we have exactly the same problem. I think we understand your argument, Mr. Reyes. Thank you. Thank you. We'll take this case under advisement. That completes the cases on our argument calendar. We have one case that we'll take on submission, United States v. Zoe Sanchez. And so with that, I think we are ready to adjourn. Court stands adjourned.